UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

JAMES HODGES, Jr.                        :

        Plaintiff,          :     **MEMORANDUM AND
                                                O R D E R**

  - against -                            :
                                               04 Civ. 2315 (NRB)
                                         :

JO ANNE B. BARNHART                      :

        Defendant.          :
----------------------------------------x
**NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE**

Plaintiff James Hodges, Jr. ("plaintiff") brings this action
pursuant to Section 205(g) of the Social Security Act ("the
Act"), 42 U.S.C. § 405(g), challenging a final decision of the
Commissioner of Social Security ("defendant" or the
"Commissioner") denying his application for disability insurance
benefits. Now pending are the parties' respective motions for
judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).
For the reasons stated below, this case is remanded to the ALJ
for further proceedings consistent with this opinion.


**BACKGROUND**

**I.  Procedure**

On September 8, 1998, plaintiff filed an application for
disability insurance benefits, claiming to have been disabled

since December 1, 1996.[1]  Tr. 73-75.  This application was denied
on January 6, 1999 and plaintiff's request for reconsideration
was subsequently denied on April 20, 1999.  Tr. 60-68.
Plaintiff then requested a hearing before an ALJ, which was held
on December 3, 1999 before ALJ Herbert Rosenstein.  Tr. 25, 69-
71.  On June 21, 2000, the ALJ issued a decision finding
plaintiff not disabled.  Tr. 18-23.  In particular, the ALJ
ruled that while the plaintiff experiences "some degree of pain
and resultant limitation," Tr. 21, he retains the residual
functional capacity to perform the requirements of his past
relevant work under 20 C.F.R. § 404.1545.  This decision became
final when the Appeals Council denied review on January 10,
2003.  Tr. 7-9.  This action ensued.


## II. Facts

Plaintiff, a forty-five year old male at the time of the
hearing, is approximately five foot-ten inches tall and 225
pounds.  Tr. 28, 37.  Plaintiff lives in White Plains, New York
with his wife and three sons, and was a college football player

---

[1] On November 26, 1996, plaintiff was issued a partially
favorable decision to a prior application for disability insurance
benefits. Tr. 45.  Plaintiff was found to have a "disability," as
defined by the Act, from October 14, 1993 through November 12, 1995,
but not thereafter.  Tr. 53.  This decision is not the subject of the
present appeal.

at Mississippi State University before receiving a masters degree in public administration while serving in the Air Force. Tr.28, 32.

Plaintiff's work history consists primarily of working at community service organizations. From 1984 to 1988, plaintiff was a supervisor at the Westchester Community Opportunity Program where he supervised 425 senior citizens across six New York counties. Tr. 30. After this job, plaintiff was a supervisor for two years at a woman's shelter in Mount Vernon, New York. Id. In this position, he supervised eighteen women and handled other daily operations of the facility. Id. According to plaintiff, his job involved spending half of the day sitting and the other half standing and walking around. Id. Plaintiff's most recent job, which lasted for six months until October of 1993, was as the director of a mental health facility in Harlem, New York. Tr. 29. Plaintiff administered a 125-bed facility and supervised the daily operations of the facility, including budgetary work and the responsibilities of thirty-two staff members. Id. Plaintiff testified that in an eight-hour day, the job involved four hours of sitting at a desk, two hours of standing, and two hours of walking. Tr. 29, 106. Further, plaintiff occasionally had to bend and reach, though there was no lifting at all besides for restraining patients on rare

3

occasions.  Id.

## A.  Injuries

Plaintiff suffers from a variety of knee, spine, heart, shoulder, and hypertensive ailments.  At his hearing, plaintiff testified that he had developed severe hip and back pain that spread to the legs, ankles, and feet, distracting him from his daily activities.  Tr. 32-33.  This pain was caused by recurring knee problems that began in 1986.  Tr. 126, 181.  It would take plaintiff "almost a half hour or 2 hours to get out of bed in the morning." Tr. 32.  Plaintiff could not walk for long periods of time and had problems standing in one spot for more than twenty or thirty minutes.  Tr. 32, 37.

In addition to his knee, plaintiff suffered a herniated disc in his neck in 1997 after falling on a treadmill during physical therapy.  Tr. 41-42.  Plaintiff experienced shooting pain in his arms, hands and fingers, causing numbness that did not allow him to move his fingers.  Id.  Plaintiff also stated that he suffered from severe chest pains, which persisted once or twice a day despite taking medication.  Tr. 34-35.  If the pain did not go away within fifteen to thirty minutes of laying down, plaintiff took a nitroglycerin tablet.  Tr. 36.  These pains were diagnosed as unstable angina, hypertension, and anemia.

4

Tr. 142.

## B. Medical Evidence

### 1. Knee Injury

Plaintiff suffered multiple injuries to his right knee prior to the period in question requiring a number of arthroscopic surgeries. During the period in question, plaintiff's knee was recovering, and by May 14, 1997, plaintiff's physician Dr. Unis reported that he was having only "occasional pain and swelling." Tr. 212. Knee stability and motion were good and strength was improving. Id. Although plaintiff was progressing and doing his own physical therapy, he still complained of periodic pain and swelling of the right knee. Id. Plaintiff's status remained the same through August 24, 1999. Tr. 242-43.

### 2. Shoulder Injury

On July 1, 1998, Dr. Unis reported that plaintiff had complained of "[l]eft shoulder pain on and off for the past few months." Tr. 213. Motion was full and x-rays showed no evidence of fracture, dislocation, or arthritic changes. Tr. 214.

### 3. Herniated Disc

An MRI of plaintiff's neck, performed on October 14, 1998, revealed "a left C4-5 disc herniation with very mild impingement on the cord signal and moderate narrowing of the left C4-5 neural foramen." Tr. 170. Dr. Lansen, the treating neurosurgeon,

prescribed a Medrol dose pack and a course of physiotherapy. Tr. 171. If that failed to work, Dr. Lansen would consider an anterior cervical discectomy and fusion. No such procedure was ever performed.

On November 30, 1998, Dr. Lansen stated that the Medrol dose pack and physiotherapy were effective, but plaintiff reported to him that he awoke with "diffuse numbness of the left hemibody, including the face, which has progressively improved." Tr. 351. Because this was more compatible with potential stroke disease, plaintiff was referred to Dr. Stephan Krantzler, a neurologist. Tr. 351. Dr. Krantzler diagnosed him with as having suffered right subcortical transient ischemic attack, a temporary interruption of blood flow to the brain similar to a stroke. Tr. 354. Dr. Kranzler noted that plaintiff's herniated disk C-4 was resolving, but that disk C-5 suffered from radiculopathy. Tr. 354.

4. **Chest Pains and Numbness**

On July 7, 1997, plaintiff was admitted to the Mount Vernon Hospital complaining of chest pains. Tr. 141. Dr. Thomas Price observed that plaintiff was in no acute distress and that his pulse, breathing, and reflexes were all normal. Tr. 141-42. Dr. Price made the clinical findings of unstable angina, hypertension, and anemia. Tr. 142. Plaintiff was discharged

and transferred to the Westchester County Medical Center. Tr. 142. The results of a cardiac catheterization were normal and showed no evidence of coronary artery disease. Tr. 128-33. On February 25, 1998, Dr. Price reported that plaintiff had no chest pains and no shortness of breath. Tr. 371. At his next visit with Dr. Price, plaintiff complained of chest pains that started earlier that morning. Id. Dr. Price's impression was atypical chest pain. Id.

5. **Overall Assessments**

On November 20, 1998, Dr. William Lathan reviewed plaintiff's medical history and examined the plaintiff at the request of the Social Security Administration. Tr. 222-28. Dr. Lathan's impression was a history of cervical discopathy, right knee arthalgia, and back syndrome. Tr. 224. His prognosis was "guarded," and he stated that plaintiff was "[i]mpaired for prolonged walking, running, stooping, kneeling, and squatting." Id.

On December 23, 1998, a state agency medical consultant reviewed plaintiff's medical records and evaluated his residual functional capacity. Tr. 233-40. The doctor diagnosed plaintiff with a history of cervical discopathy, right knee arthalgia, and back syndrome and stated that plaintiff is "unable to perform prolonged walking, running, stooping,

kneeling, and squatting." Tr. 233-34. The doctor opined that plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 234. Plaintiff's ability to push or pull was limited in his lower extremities. Id.


**DISCUSSION**

I. **Standard of Review**

Under the Act, a person is entitled to Social Security disability benefits when he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such a "physical or mental impairment" must be supported by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

A court's review of the ALJ decision is limited to determining whether the decision is based on correct legal principles and supported by substantial evidence in the record. 42 U.S.C. § 405(g); see Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).

Substantial evidence has been defined as "'more than a mere scintilla,'" and is "'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Further, "[w]here there is substantial evidence to support either position, the determination is one to be made by the factfinder." Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

## II.  The Five-Step Analysis

The Social Security Administration (the "SSA") has promulgated a five-step analysis for evaluating disability claims. 20 C.F.R. § 404.1520.  As interpreted by the Second Circuit, the five steps are: (1) the Commissioner should consider whether the plaintiff is currently engaged in substantial gainful activity; (2) if not engaged in substantial gainful activity, the Commissioner should consider whether the plaintiff has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities; (3) if the plaintiff has such an impairment, the Commissioner must determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1");

(4) if the impairment is not listed, the Commissioner must determine whether the plaintiff retains the residual functional capacity ("RFC") to perform his past work; (5) if the plaintiff cannot perform his past work, the Commissioner must determine whether there is other work within the national economy which the plaintiff is qualified to perform. 20 C.F.R. § 404.1520; DeChirico v. Callahan, 134 F.3d 1177, 1179 (2d Cir. 1998) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)).

The Second Circuit has also established that the plaintiff bears the burden of proving each of the first four steps. The Commissioner bears the burden of proof on only the last step. DeChirico, 134 F.3d at 1180 (citing Berry, 675 F.2d at 467).

## III.     The ALJ's Findings

The ALJ denied plaintiff's claim at step four of the above analysis. The ALJ found that while plaintiff suffered from severe knee and cervical injuries, he retained the residual functional capacity to perform sedentary work. The ALJ further determined that plaintiff's prior work was sedentary, and therefore plaintiff could perform the tasks required of his prior work. Accordingly, the ALJ ruled that plaintiff was not disabled under the Act.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability.  Tr. 22.

At step two, the ALJ examined whether plaintiff had an impairment or combination of impairments defined as "severe" under 20 C.F.R. 404.1521.  Id.  As defined in that section, an impairment is severe if it significantly limits an individual's physical or mental ability to do basic work activities.  Based on the medical evidence in the record, the ALJ determined that plaintiff's shoulder injury, cardiac condition, and hypertension did not qualify as severe injuries, as "there are no indications [that these injuries] . . . have more than a minimal impact on his ability to function."  Tr. 20.  However, the ALJ found that the relevant evidence did establish that plaintiff suffered from "right knee and cervical impairments which impose limitations on [his] ability to perform basic work related functions."  Tr.19. At step three, the ALJ found that plaintiff's impairments were not "comparable in severity to the criteria" set forth for the impairments listed in Appendix 1.  Tr. 20.

At step four, the ALJ found that plaintiff could perform sedentary work under 20 C.F.R. § 404.1567(a).  The ALJ evaluated the extent of the limitations to plaintiff's capabilities from his injuries, and determined that these impairments did not

"prevent the performance of low levels of activity on a sustained basis." Tr. 21. In reaching this conclusion, the ALJ found that the "medical documentation fails to establish the existence of any disabling impairments." Tr. 20. Furthermore, the ALJ ruled that plaintiff's subjective allegations of severely debilitating pain were not credible to the extent alleged. Finally, the ALJ examined plaintiff's previous work, and determined that his "past relevant work as director of a mental health facility did not require the performance of work-related activities precluded by his residual functional capacity." Id. Accordingly, plaintiff was not entitled to disability insurance benefits under the Act. Tr. 23.

## IV. Review of the ALJ's Findings

Plaintiff challenges two aspects of the ALJ's decision. First, plaintiff argues that there is not substantial evidence to support the ALJ's finding that plaintiff's RFC is sedentary. Second, plaintiff contends that even if his RFC is sedentary, he is still incapable of performing his prior work. Based on our review of the record, we find that substantial evidence supports the ALJ's conclusion regarding plaintiff's RFC, but does not support the finding that plaintiff's past relevant work as a mental health facility director was sedentary work. Tr. 22.

12

## A. Residual Functional Capacity

An RFC assessment is based on relevant medical and other evidence, and measures an "individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week." 20 C.F.R. 404.1545(a)(1), (a)(3); 61 Fed. Reg. 34,479 (1996). Because the Act is remedial, and thus broadly construed and liberally applied, the Commissioner must make a thorough inquiry into the objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience. Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983). Here, the ALJ concluded that plaintiff had the RFC to perform sedentary work. Tr. 22.

The SSA defines sedentary work as "lifting no more than 10 pounds at a time and . . . [a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally . . . ." 20 C.F.R. 404.1567(a) (emphasis added). "Occasionally" means from very little up to one-third of the time, and generally totals no more than two hours of work in an eight-hour workday. 61 Fed. Reg. 34,480 (1996); see Perez v. Chater, 77

F.3d 41, 46 (2d Cir. 1996). Based on our review of the record, we find that there is substantial evidence in the medical records to support the ALJ's determination that plaintiff could perform sedentary work.

First, the medical records support the ALJ's determination that plaintiff's shoulder, cardiac, and hypertensive conditions did not affect his ability to perform work related functions. Plaintiff's shoulder injury was admittedly intermittent, and upon examination of his shoulder, plaintiff's physician found full range of motion, with x-rays showing no signs of fracture, dislocation, or arthritic changes in the shoulder. Tr. 214. The medical records also show that plaintiff's hypertension, a condition he had suffered from for years, was kept under control through medication without any end organ damage or other complications. Tr. 128, 133, 141, 150, 226-27. Finally, while plaintiff suffered occasional chest pain, Tr. 371, the results of his cardiac catheterization were normal, with no evidence of any coronary artery disease. Tr. 128-35.

Second, substantial evidence also support the ALJ's determination that plaintiff's right knee and cervical impairments did not prevent him from performing the limited requirements of sedentary work. During the period in question, plaintiff was only having "occasional pain and swelling" in his

right knee.  Tr. 212.  Knee stability and motion were good and strength was improving.  Id.  According to Dr. Unis's report, this occasional pain and swelling continued through August 24, 1999.  Tr. 242-43.  Plaintiff's cervical problems were also improving.  The initial MRI revealed "a left C4-5 disc herniation with very mild impingement on the cord signal and moderate narrowing of the left C4-5 neural foramen."  Tr. 170. An examination on November 30, 1998, noted that plaintiff's herniated disk C-4 was resolving.  Tr. 354. Medical evaluations also showed no reflex loss from the herniation, nor any limitation in the range of cervical motion.  Tr. 170, 224.

Finally, the medical assessments performed at the request of the Commissioner further support the ALJ's finding that plaintiff could perform sedentary work.  On November 20, 1998, Dr. William Lathan examined the plaintiff and found that plaintiff was only "[i]mpaired for prolonged walking, running, stooping, kneeling, and squatting." Id.  On December 23, 1998, a state agency medical consultant reviewed plaintiff's medical records and evaluated his residual functional capacity.  Tr. 233-40.  The reviewing doctor  diagnosed plaintiff with a history of cervical discopathy, right knee arthalgia, and back syndrome and stated that plaintiff is "unable to perform prolonged walking, running, stooping, kneeling, and squatting."

Tr. 233-34.  The doctor opined that plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.  Tr. 234.

As noted above, sedentary work only requires an individual to walk or stand occasionally, and requires only the ability to lift ten pounds.  Nothing in the medical records demonstrates that plaintiff could not perform these tasks.  Therefore, we find that there is substantial evidence in the medical records to support the ALJ's finding that plaintiff could perform sedentary work.

Plaintiff challenges this finding on three bases:  1) the ALJ improperly rejected the opinions of plaintiff's treating physicians; 2) the ALJ improperly rejected the plaintiff's subjective allegations of pain; and 3) the Commissioner failed to properly evaluate the plaintiff's new evidence submitted after the decision.  We address each argument in turn.

Greater weight is generally given to treating sources so long as the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2).  This is known as the "treating physician" rule.  See Shaw v. Chater, 221 F.3d 126,

16

134 (2d Cir. 2000).  If clinical findings for the relevant disability period are inadequate, the ALJ should seek additional information from medical sources, and should not substitute his own expertise for a treating physician's opinion.  See Rosa, 168 F.3d at 79.

First, with respect to plaintiff's treating physicians, plaintiff argues that the ALJ improperly rejected a 1995 opinion by Dr. Unis that plaintiff was totally disabled.[2]  "A statement by a medical source that [plaintiff is] 'disabled' or 'unable to work' does not mean that" plaintiff will be found disabled by the Commissioner. 20 C.F.R. § 404.1527(e)(1).  Determinations of work capacity do not fall with the purview of medical opinion, but are reserved to the Commissioner.  Id.  Moreover, as noted by the ALJ in its decision, this opinion concerns plaintiff's medical condition prior to the relevant disability period. Tr. 21.  As such, the ALJ properly gave greater weight to the objective medical evidence in the record that established plaintiff was not completely disabled.

---

[2] Plaintiff also argues that the ALJ failed to properly consider a report by Dr. Price regarding plaintiff's ability to work.  That report was not submitted until after the ALJ's decision, and is addressed in the discussion of new and material evidence.

Plaintiff also claims that the ALJ failed to properly evaluate plaintiff's subjective allegations of pain and credibility in finding he could perform sedentary work.

In evaluating subjective allegations of pain, the ALJ must assess whether medical evidence shows "the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A). If there is "conflicting evidence about a [plaintiff's] pain, the ALJ must make credibility findings." Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). As a fact-finder, the ALJ can accept or reject testimony, but the ALJ's findings must be consistent with the evidence. Id. at 261. When the alleged symptoms suggests greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted, and considers "the extent to which there are any conflicts between your statements and the rest of the evidence." 20 C.F.R. § 404.1259(c)(4).

Plaintiff complained of difficulty in getting out of bed or standing in one spot, inability to lift and carry objects over five pounds, shooting pain to his arms, severe chest pains, medication side effects, and limitations in his daily routine and social life. Tr. 32-42. The ALJ found that the plaintiff's allegations were "not credible to the incapacitating extent

18

alleged." Tr. 21. First, the ALJ noted that the medical records did not support the degree of symptoms alleged. Second, the ALJ observed that the plaintiff's "continued activity level tends to belie the degree of debilitation alleged." Id. Specifically, the ALJ noted that the plaintiff could still operate his car for short periods, had no difficulty reading, and could socialize with others. Id. Based on our review of the medical records, we find substantial evidence in support of the ALJ's credibility finding. Accordingly, the ALJ properly discounted plaintiff's subjective allegations of pain.

Third, plaintiff contends that the Appeals Board failed to properly assess Dr. Price's medical report, submitted to the Appeals Council after the ALJ's decision. P.'s Mot. at 21-23. In this report, Dr. Price stated that plaintiff could only sit for up to one hour in an eight-hour workday and stand or walk for the same limited period. Tr. 392. The Appeals Council should consider "new and material evidence . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently on the record." C.F.R. § 404.970(b); see Perez, 77 F.3d at 44. The Second Circuit has summarized a three-pronged approach regarding evidence proffered to the Appeals Council. First, it must be new and not cumulative of

19

the established record. Second, it must be material, which requires that the evidence is both related to the time period for which plaintiff claims disability and that it might have changed the ALJ's decision had it been available. Third, there must be good cause why the evidence was not presented earlier. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).

Plaintiff's claim fails to meet the second prong of the analysis -- "materiality." Although Dr. Price opined that plaintiff could only sit and stand or walk for up to one hour each, Dr. Price's report offered no new clinical evidence regarding the relevant period; rather it was a summary of his earlier findings and an added conclusion of plaintiff's work capacity. Tr. 391-94. As noted previously, it is the role of the Commissioner, and not Dr. Price, to determine whether plaintiff meets the statutory requirements for disability, C.F.R. § 404.1527(e)(1). 20 C.F.R. § 404.970(b); see Perez, 77 F.3d at 44. As Dr. Price's underlying clinical records for the period in question had already been considered by the ALJ, there is no reason to conclude that "there is a reasonable possibility that the new evidence would had influenced the [ALJ] to decide claimant's application differently." Tirado, 842 F.2d at 597.

For the foregoing reasons, we find that the ALJ's determination that the plaintiff could perform sedentary work is supported by substantial evidence in the record.

**B.    Past Relevant Work**

The SSA defines "work experience" as work done within the last fifteen years. 20 C.F.R. § 404.1565(a).  As the SSA states:

> [p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work . . . The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.

S.S.R. 82-62 (Cum. Ed. 1982).  Past relevant work can also be assessed based on other sources such as vocational experts, past employers, and the <u>Dictionary of Occupation Titles</u> ("DOT"). <u>Id.</u>; 20 C.F.R. § 404.1560(b)(2).  This evidence can pertain to how "the claimant actually performed [past work] or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2); <u>see also</u> <u>Jock v. Harris</u>, 651 F.2d 133, 135 (2d Cir. 1981).

A claimant makes a <u>prima</u> <u>facie</u> showing of disability by establishing that he is unable to return to his prior type of work.  <u>Jock</u>, 651 F.2d at 135.  At his hearing, plaintiff testified that his most recent job required that he spend half of his time walking around the mental health facility.  Tr. 29. Before this job, plaintiff was an administrator of a woman's shelter for two years, where he had a similar exertional level.

## CONCLUSION

Since the ALJ's determination that plaintiff could perform his past relevant work is inconsistent with the record, the Commissioner's denial of disability benefits is not supported by substantial evidence. Therefore, we order that the case be remanded pursuant to 42 U.S.C. § 405(g) for additional proceedings consistent with this decision. On remand, the Commissioner should complete step five of the analysis and examine whether the plaintiff is qualified to perform other sedentary work within the national economy. The Clerk of the Court is respectfully requested to close this case on the Court's docket with leave to reopen the case if that should be necessary after the conclusion of the administrative proceedings on remand.

**IT IS SO ORDERED.**

DATED:    New York, New York
          May 25, 2005

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

22

Copies of the foregoing have been mailed on this date to the following:

Counsel for Plaintiff
Charles E. Binder, Esq.
Binder and Binder
215 Park Avenue South, 6th Floor
New York, NY 10003

Counsel for Defendant
Susan D. Baird, AUSA
Office of the United States Attorney
Civil Division
86 Chambers Street
New York, NY 10007